Good morning, Your Honors. This is Perry Goldberg from Progress LLP for the appellant and patent donor Canuu. May it please the Court. Canuu and Samsung entered into an NDA in 2012 so that they could discuss whether Samsung would license Canuu's now-patented technology. Based on the protections that Samsung promised to Canuu in the NDA, Samsung induced Canuu to share detailed, confidential information with Samsung, including a proof-of-concept demonstration that Samsung asked Canuu to build to show Samsung exactly how Canuu's technology could be implemented on Samsung's smart TVs. But Mr. Goldberg, this is Judge Prost. You started with the agreement, and the agreement is quite clear. You mentioned they were going to discuss licensing. This is not a license agreement, correct? That is correct, Your Honor. Yes, and I will be addressing the relevance of that distinction. Okay. So the central protection that was provided by the NDA is that Samsung agreed to use Canuu's information only to, quote, further a business relationship between the parties, end quote, which the NDA defined as the, quote, business purpose, end quote. Samsung's brief omits any reference to the business purpose and instead quotes only the preface of that sentence about disclosing confidential information. They don't talk about the part as to why the confidential information was being disclosed. How does that affect the issue that's before us, which is whether or not the IPR was within the scope? Right, yes. So the issue here is the scope of the forum selection clause. And the forum selection clause governs not only disputes that relate to the agreement, but also the transactions contemplated by the agreement. And so the purpose of the agreement, the transactions that were contemplated, were a business relationship. And there's no dispute, it's undisputed, that the specific type of business relationship that was contemplated was a patent license agreement to the patents that are at issue in the IPRs here. And the fact of the matter is that Samsung promised it would use Canoo's confidential information only for the business purpose, for no other purpose whatsoever. And what happened, though, is, and this is also undisputed, Samsung broke off the business discussions and then accessed Canoo's proof of concept bill more than 2,500 times. This was a clear breach of the agreement. Subsequently, Samsung released the same technology on its smart TVs that Canoo had showed to Samsung under the NDA, which prompted Canoo to sue Samsung for breach of the NDA and for patent infringement. Canoo contends that Samsung improperly used… Mr. Goldberg, this is Judge Chen. I'm sorry, we don't have a lot of time, so here's the crux of my problem. If we were looking at a patent licensing agreement, then I could completely understand and see how a patent invalidity challenge in an IPR would necessarily disrupt and interfere with the terms of the patent license. But I don't necessarily see how an IPR proceeding here disrupts or impacts any of the obligations here in a nondisclosure agreement. And so it doesn't impact the outcome of any NDA claim that you might have against Samsung. If they, in fact, improperly disclosed or used the confidential sensitive information that you disclosed to them under the NDA, for any reason, you'll have that claim as a breach of contract. But the patent validity question just seems separate and apart from any NDA obligation here. So could you just answer that question for me? And the distinction I see between what I would think of as a Garm variety patent license agreement and what we have here, which is a nondisclosure. Thank you, Your Honor. So the issue here is not the type of agreement. It's what does the forum selection clause cover. And so if you have a patent license agreement, it might be more obvious that patent issues are going to be covered by a forum selection clause. Here, imagine for a moment that the forum selection clause in our case specifically said all patent disputes must be resolved in a court in New York and only there. Well, if that's what it said, I don't think there would be any concern about the fact that we're dealing with a nondisclosure agreement rather than a patent license. And so the point is you have to look to the forum selection clause language to see what's covered and what's not. And so what's the context in interpreting that? And here, the context is that the parties had contemplated transactions, and it's undisputed what those are. And it's undisputed that the forum selection clause covers disputes that relate to the contemplated transactions. They're not consummated transactions. The only problem I have with this is that the only time that the word patent comes up in this nondisclosure agreement is in a provision which makes it very clear that nothing in this agreement confers any patent rights to anybody under any kind of license. So the NDA expressly repudiates any kind of patent-related arrangement. Well, Your Honor, I think it's interesting that aspect of this NDA. We look at it as the opposite of what Samsung has argued. So the fact that this NDA makes clear that Canoe was not granting a patent license as part of this. The point was Samsung did not have the right to use Canoe's patented technology. The fact that Canoe was willing to share its proof of concept build and other detailed information was specifically because Samsung promised to use it only for the business purpose. But that relates to a violation of the nondisclosure agreement, rightly or wrongly. What has that got to do with the IPR and why that's covered by the forum selection clause? Right. So the information, because it was used by Samsung to copy the technology and introduce an infringing product, copying is directly relevant to the obviousness issues that Samsung has raised. So copying, of course, is one of the secondary considerations. It has featured prominently in these IPR proceedings. So because there are the same operative facts, the fact that Samsung accessed Canoe's proof of concept build after they broke off the discussions, those same facts are prominently at issue in the IPRs. Those same facts led to Canoe's suit for patent infringement, which caused Samsung to raise the affirmative defense of invalidity based on obviousness. It's all part and parcel of the same dispute. I guess I come down to the question again, though. What does patent validity have to do with the breach of any provision or obligation in this NDA? Whether your patents are valid or invalid or challenged for validity or not challenged for validity, I don't see how that has anything to do with the obligations parties have under an NDA. Great. So, you know, again, the Form Selection Clause pertains to any dispute that it's not just arising under the NDA. So that would, you would have to have it be a dispute about is there a breach under the NDA. This is a dispute not only arising under, but also the Form Selection Clause covers disputes relating to, and then also not just relating to the NDA, but also the transactions contemplated. So I think a thought experiment has really helped me a lot. I'd just love to get it out real quick. Imagine that tomorrow, Samsung introduced a washing machine, and it called the washing machine, this line of washing machines, their Canoo line of washing machines. And Canoo might say, wait a minute. We wonder if there's a trademark issue here. Well, the parties never talked about washing machines in 2012. Canoo's patents have nothing to do with washing machines. The discussions have nothing to do with trademarks. That would be unrelated to the transactions contemplated. But the dispute that we're talking about here is exactly what the transactions contemplated were. It's exactly what information Canoo disclosed. That same information is the information that's at issue in the IPRs on copying. And so, you know, Samsung argued in the new current case that claims for patent infringement were related, even though there was no consummated patent license in the new current case. They said that because copying was alleged, the NDA that they drafted was broad enough and needs to be interpreted broadly under New York law. It was broad enough to cover claims for patent infringement because there was an allegation of copying of the confidential information that was disclosed. It's exactly the situation we have here, Your Honors. That's a district court opinion, right? That is a district court opinion, and that's correct. So, you know, here, the language of the Form Selection Clause, it has the word must. So it's the shall language. The Supreme Court has explained that Form Selection Clauses are presumptively valid unless they're clearly unreasonable or fraudulent. We have the language here in the Form Selection Clause that disputes must be instituted, quote, unquote, exclusively in a court of competent jurisdiction located within the borough of Manhattan and in no other jurisdiction. So these are key words explaining that you can't have a parallel proceeding. It's exclusively in New York and nowhere else. And, you know, I would focus, Your Honors, on the meaning of the transactions contemplated language. Samsung's interpretation would render that phrase superfluous, which clearly cannot be the case. So I'll reserve the, I think, eight seconds I have left for rebuttal. And we'll save you rebuttal time. Any more questions for Mr. Goldberg at the moment? No. Okay, then we'll hear from the other side. Mr. Maroulis. Good morning, and may it please the Court. This is Victoria Maroulis, counsel for affilee Samsung. Your Honors, I'd like to start where the Court questioned the appellant, which is the difference between licenses and nondisclosure agreements. In this case, the language of the nondisclosure agreement is extremely clear. The agreement is entirely concerned with confidentiality of information and protection of that confidentiality. On its face, the nondisclosure agreement expressly disallows any notion that… Well, Ms. Maroulis, this is Judge Prowse. Sorry to interrupt, but time is limited. What is your response to your friend's argument that there is some relationship between this nondisclosure agreement and the IPR proceeding, because copying is part and parcel of the nondisclosure agreement, and that is an important factor or might be an important factor in adjudication of the IPR? What's your answer to that? Your Honor, the allegations of copying and IPRs are not relevant to this analysis for several reasons. One, you can breach a nondisclosure agreement without any copying at all, and one can also copy information for secondary edition purposes without any reference to the nondisclosure agreement. In fact, the district court found that the impact of the IPRs in any discussion there will have nothing, no effect on the NDA breach claim in the district court, and the district court relied on Knuth's own admission in the motion to state briefing that the IPRs will not have effect on the NDA breach. The second reason is that most of the IPR proceedings are actually concerned with anticipation, not obviousness. There's only one claim per patent, Claim 5, that has solely obviousness grounds, so if SAMHSA works to proceed only on anticipation in the IPRs, the discussion wouldn't be relevant at all. And finally, the district court… But 103 is part of the IPR. You haven't abandoned your 103 argument in the IPR, is that right? That's correct, Your Honor. Up there. So until you abandon that, it's part of the case, and we have to, therefore, confront the arguments here. Yes, Your Honor. The overlap of any potential allegations that can be made does not make IPRs related to arising out of this agreement. Under New York law, the related to and arising out of language is not unlimited, and the district court cited specifically the New York case law that suggests that transaction contemplated hereby has to do with what is in the agreement and has to be derived from the agreement. Here, transaction contemplated hereby is exchange and protection of confidential information, because that is all the agreement discusses, that is all the agreement is directed to. And in addition to paragraph 8 that the court pointed out during appellant's argument, that this agreement is not a license and is not intended to grant any rights or obligations in the license, there is a further provision in section 9 which says that this is not a commitment to have any business relationship or engage in any business relationship. This particular nondisclosure agreement could not be more clear that it excludes any license or any other formal business relationship and only directs itself to disclosure and protection of information. For that reason, the case law that Camille relies on in its briefing is an appellate, because this court has considered whether patent disputes arise out of or related to patent license agreements or patent settlements. So that raises quite an interesting question. Let's just, I'm going to present a hypothetical. Let's say that Camille sues Samsung for patent infringement in Texas, which Camille presumably can do since they're a Texas company. Would Samsung say, no, you're barred by this agreement, you must sue us in New York, which is what Camille apparently thought they had to do? Your Honor, this depends on what the allegations look like specifically. For example, in this case, the patent claim is paired with a nondisclosure breach claim, so it had to be brought in New York because there's a NDA nondisclosure violation allege. The charge was infringement. Was there no charge of infringement? There also is a charge of infringement. So there are both the patent infringement claims and NDA claims in New York. If the court's hypothetical were for a bare patent infringement claim in Texas that does not include NDA breach and does not include allegations of willful infringement, for example, they could potentially sue in Texas. So we need to look at both the claims that are asserted and what the agreement specifically permits. That's interesting because it does look as if Samsung's interest in a nondisclosure agreement, in a choice of forum, was to move this Texas patentee out of Texas and into New York. Your Honor, this is the new current case in Texas, and that case is quite different because the dispute there was whether the second 2016 nondisclosure agreement covered the same confidential information as the earlier 2015 nondisclosure agreement, and that case also included trade secret claims. Here, it's a very different situation because we don't have trade secret claims and we're looking at IPRs, which is a forum for adjudication of validity, and all PTAB is concerned with is validity or invalidity of previous patents, on two patents that the IPRs were declared on. So the new current case has a different posture, different application, and the argument was not over what proceedings are implied, but what facts and claims are intermingled together. The second new current case in the Southern District of New York actually resulted in a denial of injunction when Samsung filed IPRs and the other side fought to enjoin those IPRs. That's the only case that has discussed injunction of IPRs in the context of the nondisclosure agreement, and it also denied the injunction there. And I should point out that not a single decision of this court or any trial court have granted injunction of IPRs based on nondisclosure agreements, such as here or any other type of nondisclosure agreement itself. Ms. Merlis, this is Judge Prost. This is a little off track, but I'm just interested as to what the status is of the IPR proceedings at this point in time. Yes, Your Honor. We had a hearing on June 30, and the final written decision is expected by September 24. Thank you. Your Honor, to go back to the main argument, the district court did not abuse its discretion in announcing the four injunction factors. We already briefly addressed the merits or the likelihood of success in the merits, and that factor is fatal to the application for injunction because the form selection clause does not cover the IPR proceeding, either through related to agreement language or related to transaction contemplated here by language. But the court has also addressed several other factors that I'd like to go over briefly. On the irreparable harm, first of all, there is a very substantial delay in bringing the motion here. The new weighted seven months after the filing of the IPRs to bring the preliminary injunction motion. Preliminary injunction is extraordinary relief, and delay of any kind, let alone six or seven months, is fatal to the injunction application. The cases such as Nomadic's Wheel and Richard Payner denied injunctions for the delay of as little as five months, and this is to be contrasted with some cases that this court granted injunction where the application was immediate. But the district court also found other basis for the lack of irreparable harm. One was that the additional expense and additional work implied in the IPR proceedings is not a cognizable harm. That is a fraud case. And in this case, it's not a harm to litigate in 2-4 at the same time because the proceedings in the district court are staged and the committee can focus on the IPR proceedings. And finally, the court looked at whether a risk of invalidation of a patent could be a cognizable harm and found that it could not rely in part on new client southern district decision or in part of other jurisprudence. This case is different from instances such as Dodo case, for example, where a party filed specifically an affidavit about the difficulty of complying with two proceedings at the same time because the company was small and they didn't have enough employees. So, in other words... This is Judge Prost. Wasn't the Dodo case also involving a license and a non-challenge as well? That is correct. The Dodo case involved a license. In that instance, it's not applicable to this case, but it also had a very express no-challenge clause. So, there was not a dispute there that validity could not be challenged in that instance, which is different from this current instance. The other two factors that the court also addressed were balance of hardship and public interest. Specifically, in the balance of hardship, the court pointed out that Samsung had only one year from the service date to bring IPRs, and it would be harmed if it couldn't proceed because they would lose forever that right, whereas Canoe could proceed in the IPR forms and still litigate in district court after the stay. And the public interest factor, Your Honor, dovetails with the alternative policy arguments that the attorneys are making here. And we should say that this case can be resolved solely on the language of the NDA at issue, and under that language, the district court correctly interpreted that. But we also made an alternative additional public policy argument, which is the need for the clear statement. If one is to lose ability to challenge patents in the TTAP proceedings, which were set up by Congress as a specific venue, specific forum, to weed out bad patents and to keep the patent system robust. And in that section of our brief, we addressed the policy concerns with using a very bare provision such as one here in NDA that does not have a clear statement of intent to disclaim validity challenge to bar a party from appealing to the IPRs. And this leaves the basis from the earlier cases, and it's the same argument that underlies our public interest arguments and the clear statement argument as well. All right. Anything else that you'd like to tell us? Your Honor, in sum, I would ask the court to affirm the district court's ruling. The district court correctly balanced the four factors and did not err in interpreting the plain language of the non-disclosure agreements. The district court correctly ruled on the likelihood of success and the merits and also correctly balanced the remaining factors of the injunction. So unless the court has any additional questions for that, please, we would rest on the beast for the rest. Any more questions for Ms. Maroulis? No, thank you. No, thanks. All right. Thank you, counsel. We'll hear from Mr. Goldberg. Thank you. Thank you, Your Honors. Ms. Dunn's counsel has made reference to there being no abuse of discretion. The abuse of discretion standard, of course, we believe there is an abuse of discretion here, but importantly, there's an abuse of discretion where the decision is based on an erroneous interpretation of a contract, which is the case here. It's undisputed that under New York law, contract interpretation is reviewed de novo. So there's no deference that's required to be given to Judge Ramos's interpretation of the contract. Judge Prost referenced or asked about the status of the IPR proceedings, and that relates, I would say, perhaps to an issue of, you know, is this moot? Because we are at a far along stage here of these IPR proceedings. We've already gone through a trial. But if that is on anyone's mind, I would say this is not a moot point because there still are further proceedings. There's an appeal, as well as other potential proceedings here on this particular IPR. Mr. Perry, Mr. Goldberg, this is Judge Prost. I don't want to prolong this, so I'm going to ask you a question. I hope you can give me a short answer. During paragraph 15, the sentence we look at is at the middle of the paragraph, any legal action or suit or proceeding arising out of. But look at the first sentence of that paragraph. It talks about enforcing any rights arising out of or relating to this agreement. So do you see a legal action meaning an action to enforce rights arising out of the agreement? Is that how we reconcile those two as being the same thing? Well, the first sentence of paragraph 15 pertains to being entitled to recover attorney's fees. Right, but it's talking about the action. It talks about attorney's fees used to enforce any rights arising out of or relating to this agreement. So when we talk about legal action two sentences later, does legal action encompass or mean the same as an action to enforce rights arising out of or relating to this agreement? I see Your Honor's point. Now, I would argue, Your Honor, that the first sentence is specifically focused on the agreement, whereas the later sentence talks about the agreement or the transactions contemplated. So these are within the same paragraph. I mean, it's sort of like a claim differentiation argument. The drafter here is using, you know, the term the agreement by itself in one place, and then it says the agreement or the transactions contemplated in the second place. And so that phrase or the transactions contemplated has to have meaning. Otherwise, that can't be the correct interpretation. Okay, thank you. Thank you. Now, in terms of Samsung's argument... Sir, please continue. Thank you, Your Honor. That there was delay, that there was no unreasonable delay here to new raise this issue. In the PTAB, we believe that the PTAB should have addressed the issue, but chose not to, and it was only after they said, go to the district court, that we went to the district court, rather than litigating the same issue in parallel in two places. And the delay issue, that was not a basis for Judge Ramos's decision regarding irreparable harm. With respect to the Dodo case being, you know, there was a license agreement, the real question there is, what was the scope of the form selection clause? So in the Dodo case, the form selection clause was actually very narrow, and only pertained to disputes, quote, arising out of or under this agreement. So it was very significant that that was a license agreement. But here, our language of our form selection clause is broader, and so it doesn't matter that we're not talking about a license agreement. As for Samsung's argument that there needs to be a clear statement, that's an argument that was never raised below. This is an argument that was waived. We also think the argument has no merit for the reasons that we explained in our brief, but we also think that this is clear. When it says any, any means any, right? So it could have said any patent case, any trademark case. It didn't, but if you don't spell it out and you just say any, the general includes the specific. So with all that said, I really appreciate your honest time. Thank you so much. Any more questions for Mr. Goldberg? No, thank you. No, thanks. Our thanks to both counsel. The case is taken under submission, and that concludes this panel's argument cases for today.